WO                                                                                                          SKC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melinda Gabriella Valenzuela, | No. CV 19-05162-PHX-MTL (MHB) |
| Plaintiff, | |
| v. | **ORDER** |
| Jason Monson, et al., | |
| Defendants. | |

Plaintiff Melinda Gabriella Valenzuela, who is currently confined in the Arizona State Prison Complex (ASPC)-Florence, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983. Before the Court are the following three Motions that the Court construes as Motions for Preliminary Injunction: (1) Plaintiff's "Motion for Injunction Due to Safety and in Sui[ci]de Cell" (Doc. 56); (2) Plaintiff's Motion for Injunction (Doc. 67), and (3) Plaintiff's "Motion of Retaliation and Assault by Orders of Defendant Jensen" (Doc. 73). Also before the Court is "Plaintiff's Request for Telephonic Hearing on Doc. 56 as No Answer Provided as Court Ordered" ("Motion for Hearing") (Doc. 72).

The Court will deny all three Motions for Preliminary Injunction and will deny as moot the Motion for Hearing.

**I.   Background**

On screening of Plaintiff's three-count Third Amended Complaint under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment claim in Count Two against Defendants Arizona Department of Corrections Rehabilitation and

Reentry ("ADCRR") Deputy Wardens (DWs) Monson and Coleman and Associate Deputy Wardens (ADWs) Evans and Jensen for failure to protect Plaintiff from assaults by other prisoners and directed these Defendants to answer the claim. (Doc. 54.) The Court dismissed the remaining claims and Defendants. (*Id.*)

During screening, the Court also granted Plaintiff's Motion to File her Motion for Preliminary Injunction (filed at Doc. 56) and directed Defendants, within 21 days of service, to respond to the Motion for Preliminary Injunction. (*Id.*) Thereafter, on October 26, 2020, service was executed as to Defendants Coleman, Evans, and Monson, and on November 3, 2020, service was executed as to Defendant Jensen. (Docs. 64−66, 68.)

Seven days after service on Defendants Coleman, Evans, and Monson, Plaintiff filed her second Motion for Preliminary Injunction (Doc. 67), and ten days after service on Defendant Jensen, she filed a Motion for Status on Service (Doc. 71), which the Court subsequently denied; at the same time, she also filed her Motion for Hearing (Doc. 72) and her third Motion for Preliminary Injunction (Doc. 73), all within the 21-day timeframe for Defendants to respond to her first Motion for Preliminary Injunction. On the same day Plaintiff filed these last three Motions, and within the allotted timeframe for doing so, Defendants filed their Response to Plaintiff's Motion for Injunction (Doc. 70).[1]

**II.    Injunctive Relief Standard**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy

---

[1] Defendants' Response pertains instead to Plaintiff's Second Motion for Preliminary Injunction, but due to the possible confusion caused by Plaintiff's multiple filings, and based on the substance of the Response, the Court accepts Defendants' Response as satisfying Defendants' obligation to respond to Plaintiff's initial Motion. Additionally, the Court finds it unnecessary to require a separate response to Plaintiff's third Motion.

never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

A court may issue an injunction against a non-party only where the non-party acts in active concert or participation with an enjoined party. Fed. R. Civ. P. 65(d)(2) (a preliminary injunction only binds those who receive actual notice of it by personal service or are parties, their officers, agents, servants, employees, and attorneys, and persons in active concert); *see Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1984) ("A federal court may

issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court."); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969).

### III. Plaintiff's Motions for Preliminary Injunctive Relief

#### A. First Motion

In her first Motion for Preliminary Injunction, Plaintiff, who is transgender, seeks a Court order requiring that Defendants transfer her out of the general population ("G.P.") and into protective segregation ("P.S.") and that they issue orders of protection against 19 individuals in her current unit whom she alleges have caused her harm. (Doc. 56 at 4.) Plaintiff states that she has told prison staff, including Defendant DW Monson, that she does not feel safe in G.P., she is threatened daily, and she has been assaulted multiple times since October 7, 2019, but "no one did anything." (*Id.* at 1−2.) She claims that being transgender subjects her to irreparable harm "due to her gender status alone" and that she did not "sign out of P.S." or agree to come to a G.P. unit, where she claims she will "continue to be assaulted." (*Id.* at 2−3.) She also complains that she is now in a suicide watch cell, even though she is not on suicide watch; she has no shelf in her cell; the lights are kept on all night; and, instead of having metal mesh holes, like normal cells, the suicide watch cells have plexiglass "replacing the metal mesh holes." (*Id.* at 3.) She states that she "does not want to be here and would do better somewhere else" and she "did not agree to come this unit at all." (*Id.*)

#### B. Second Motion

In her second Motion for Preliminary Injunction, Plaintiff states that she was "recently moved to ASPC Florence Kasson Unit where she told multiple staff she was going to be harmed," and she gave staff the names of other prisoners who planned to harm her. (Doc. 67 at 1.) She claims that, since June 3, 2019 to the present, she has been sexually assaulted, assaulted, spit on, had a prisoner "pull her s/p tube out," and had a prisoner tell mental health they were going to beat her down. (*Id.*) She states that she can produce

documents to show she is likely to succeed on the merits of her claims and that she wrote about her issues to the Director, who chose not to do anything. (*Id.* at 2.) She argues that she "will continue to be assaulted due to being in G.P." and will continue to suffer and be subjected to irreparable harm due to her transgender status while in Kasson Unit. (*Id.*) Unlike in her first Motion for Preliminary Injunction, Plaintiff states that she no longer wants to be in P.S. but is trying to get into the Integrated Housing Program (IHP) or to an "S/O" yard. (*Id.*) She claims she "has the right to sign out of P.S" and states that "a hearing on the Intergration (sic) is warranted to go over the resolution of this case." (*Id.*)

### C. Third Motion

In her third Motion for Preliminary Injunction, Plaintiff seeks unknown injunctive relief as to Defendant ADW Jensen. (Doc. 73.) She alleges that Jensen "is not taking proper steps to protect her and is retaliating due to this lawsuit." (*Id.* at 1.) In particular, she alleges that Jensen "had CO III David Carrillo assault her and . . . make false reports and plant things in an attempt to cause her harm." (*Id.*) She further claims that she reported that she was assaulted to CO IV Garcia on October 21, 2020, using an emergency grievance, but "noting was done at all," and she asked to see medical and have a rape kit done but was denied. She also claims that Jensen "abused his power and dropped her to step 1 when by policy you can only go down 1 step." (*Id.* at 1−2.) She additionally claims that Jensen has allowed her to be assaulted multiple times and he told he had "ordered her to be assaulted and killed." (*Id.* at 2.) She argues that, absent an injunction, she will continue to be harmed. (*Id.*)

### IV. Discussion

As already noted, Defendants' Response addresses only the second of Plaintiff's Motions for Preliminary Injunction. (*See* Doc. 70.) Nonetheless, because the Motions are similar and overlapping, assert the same or similar harms, and appear to seek the same or similar relief, the facts and evidence in Defendants' Response are adequate to address all three Motions. Defendants argue that Plaintiff fails to carry her burden as to any of the *Winter* factors; most specifically, she does not address or provide any evidence she is likely

- 5 -

to succeed on the merits of her underlying claims, and, as to irreparable harm, she relies solely on generalized claims that she has been threatened and assaulted multiple times and that ADCRR staff does nothing to protect her. (Doc. 70 at 2−3.) Defendants dispute these claims and put forth declaration evidence, unrefuted by Plaintiff, that Plaintiff has not submitted any complaints of threats or assaults since being housed at Kasson Unit. (Doc. 70-1, Ex. A (Jensen Decl.) ¶ 12.) Additionally, Plaintiff is currently in Wing One, Baker Pod, which contains only four prisoners, each in single-person cells. (*Id.* ¶ 6.) Each prisoner in the pod, including Plaintiff, eats individually in his or her own cell; only one prisoner is allowed in the medical unit at a time, and the wing has 24-hour surveillance. (*Id.* ¶¶ 6−8.) Plaintiff is housed in this pod because she constantly files Prison Rape Elimination Act (PREA) complaints against other prisoners and ADCRR staff and she has numerous Do-Not-House designations with other prisoners, making housing options for her extremely limited. (*Id.* ¶¶ 9−10.) As such, the only option for securing her safety is in a single-person cell with limited contact with others, which she is currently provided at Kasson Unit. (*Id.* ¶ 11.)

The Court agrees that Plaintiff has not produced any evidence beyond general accusations of multiple assaults by unidentified assailants to show she is likely to succeed on the merits of her claims. Moreover, even if Plaintiff could make this showing, there is no evidence she faces a current threat of irreparable harm while housed at Kasson Unit, where she is kept from contact with other prisoners and is under 24-hour watch. The Court therefore lacks grounds to grant Plaintiff preliminary injunctive relief and will deny all three Motions for Preliminary Injunction. *See Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) (because the plaintiffs failed to show they are likely to suffer irreparable harm in the absence of preliminary relief, the court need not address the remaining elements of the preliminary injunction standard). Further, because Plaintiff's Motion for a Hearing relates entirely to her requests for preliminary injunction relief, and Plaintiff has not made a minimal showing as to any of the *Winter* factors to support any such requests, the Court will deny this Motion as moot.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's "Motion for Injunction Due to Safety and in Sui[ci]de Cell" (Doc. 56); Plaintiff's Motion for Injunction (Doc. 67); "Plaintiff's Request for Telephonic Hearing on Doc. 56 as No Answer Provided as Court Ordered" (Doc. 72); and Plaintiff's "Motion of Retaliation and Assault by Orders of Defendant Jensen" (Doc. 73).

(2) Plaintiff's Motions seeking a preliminary injunction (Docs. 56, 67, 73) are **denied**, and Plaintiff's Motion seeking a hearing (Doc. 72) is **denied as moot**.

Dated this 24th day of November, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge